Holt *v.* Creamer.

WOODBURY D. HOLT

*v.*

AMOS W. CREAMER et al.

1. No one can be permitted to found a claim or defence on an allegation that he has attempted to cheat his creditors.

2. If a mortgage be given with the fraudulent intent to cover and conceal from the mortgagor's creditors a part of his property, although, as to another part of his property, it is meant to be an actual security for an honest debt, as to creditors it will be altogether void.

3. A mortgagee, to be able successfully to resist the impeachment of his security, must appear to be not only a mortgagee for value, but a mortgagee in good faith. If it appears that his mortgagor executed the mortgage for a fraudulent purpose, and that he knew of such purpose, and took the mortgage to aid him in its execution, his mortgage is void against those who are defrauded by it, even if it is founded on a perfect consideration.

4. The validity of a mortgage made in good faith, to secure future advances, is no longer open to question.

5. The fact that a mortgagee knows that his debtor is trying to magnify his liabilities, and wants him to take a mortgage for a sum so large that if his creditors should regard it as an honest security, his lands would be effectually put beyond their reach, makes it his duty to inquire as to his debtor's object and purpose, and a failure to do so, constitutes a fraud. Fraud may be passive as well as active.

On final hearing on cross-bill, answer and proofs taken in open court.

*Mr. Woodbury D. Holt, in pro. pers.* and *Mr. John N. Voor-hees,* for complainant.

*Mr. John L. Connet,* for defendant Harmen H. Creamer.

*Mr. James M. Robeson,* for defendant Amos W. Creamer.

VAN FLEET, V. C.

The parties to this controversy were originally brought into court as defendants to a foreclosure suit, the person now appearing as complainant having been made a defendant in that suit because he was a judgment creditor of the mortgagor, and the defendant in this bill was made a party because he held a mortgage, made by the judgment debtor, on the premises sought to be foreclosed. Soon after the parties were in court, the present complainant filed his cross-bill, attacking the defendant's mortgage as a fraud against creditors. Harmen H. Creamer, the mortgagor, also, by answer in the main suit, assailed the mortgage of the present defendant on the same ground. With regard to this last attack, it is enough to say that no man can be permitted to found a claim or defence on an allegation that he has attempted to cheat his creditors. No rule of law is better settled than that a conveyance in fraud of creditors, or other persons entitled to the protection of the statute of frauds, is good as between the parties to it and their representatives. *Pillsbury* v. *Kingon, 6 Stew. Eq. 287.*

The debt on which the complainant's judgment is founded was contracted in 1874, and the defendant's mortgage, though dated April 1st, 1875, was not in fact executed, or even drawn, until April 22d, 1875. The mortgage purports to secure a debt of $13,974.82, and to provide for the payment of this whole sum, with interest, on the 1st of April, 1876. It is admitted that the sum stated as the debt secured by the mortgage is $7,000 in excess of the real debt. The defendant, by his answer, claims that the mortgage was given to secure a present debt of $6,974.82, and to cover advances, to be made in the future, of $7,000; and that the advances were to consist either

of money which should be actually advanced, or the conversion of the interest which should accrue on the real debt, into principal. Such conversion was to depend on the option of the mortgagor. The defendant says that at the time the mortgage was made, he held eight promissory notes, and a claim, in the nature of an open account, for nearly $1,700, against the mortgagor. With the exception of a note of $44, all the notes were made by the mortgagor directly to the defendant. One of them was made in 1863, more than twelve years before the date of the mortgage, three on the same day in 1869, one in 1870, and three in 1872. Two of those last mentioned bear the same date. On the hearing, the defendant produced a paper, drawn on the day the mortgage was executed, and just prior to its preparation, which shows that the real debt was made up as follows, the interest on each item being computed up to the 1st day of April, 1875:

| | |
|---|---:|
| Note dated April 10th, 1863........ ...... ...... ...... | $1,430 00 |
| Interest ... ...... ...... ...... ...... ...... ...... | 1,670 16 |
| Note dated March, 1869...... ...... ...... ...... | 250 00 |
| Interest ...... ...... ...... ...... ...... ...... | 128 51 |
| Note dated March 6th, 1869 ...... ...... ...... | 200 00 |
| Interest ... ...... ...... ...... ...... ...... | 97 42 |
| Note dated March 6th, 1869 ...... ...... ...... | 150 00 |
| Interest ...... ...... ...... ...... ...... ...... | 13 02 |
| Note dated July 25th, 1870...... ...... ...... | 100 00 |
| Interest ...... ...... ...... ...... ...... ...... | 36 92 |
| Note dated April 2d, 1872...... ...... ...... ...... | 44 00 |
| Interest ...... ...... ...... ...... ...... ... | 10 19 |
| Note dated April 6th, 1872... ...... ...... ...... | 850 00 |
| Interest ...... ...... ...... ...... ...... ...... | 202 25 |
| Note dated April 6th, 1872 ...... ...... ...... | 101 78 |
| Interest ...... ...... ...... ...... ...... ...... | 23 61 |
| Two bills, one of $243.15, and the other of $1,483.21, amounting together to ...... ...... ...... ...... | 1,666 96 |
| | $6,974 82 |

If we deduct from the total of $6,974.82 the two bills amounting together to $1,666.96, we have a balance of $5,307.86, which represents the debt evidenced by the notes. Of this sum, $2,182.08 is interest, and the balance, viz., $3,125.78 is principal. So it will be observed that the interest which had accrued on the principal comes within only $943.70 of being equal in amount to the principal. This result was reached by compounding the interest. The mortgagor, it is said, assented to this method of computation. The defendant says the mortgagor had never paid him any interest on any of his claims, yet that he, regardless of this long-continued remissness, continued to make him loans from time to time, without asking to have the interest in arrear on the old securities included in the new, or making it a condition of the new loans that the borrower's legal liability on the old should be revived.

As already stated, the claim in the nature of an open account consists of two separate amounts, one of $243.15, and the other of $1,423.81, as they appear on the paper already referred to. Very few of the items composing these claims are the subject of book account, and the amount charged on book is but a trifle in comparison with the aggregate amount of the two claims. The explanation given of these claims is neither satisfactory nor plausible. With regard to the one of $1,423.81, the defendant says that he presumes the most of it is for rent; that the mortgagor has had the use and occupation of a lot of four acres belonging to him, from 1859 to 1875, a period of sixteen years, and also of another lot of eight acres, for three or four years, and that when the mortgage was given, the sum due to him for this account was agreed upon and included in the mortgage debt, and he thinks it aggregated $800 or $1,000, or more. He admits that the mortgagor had made no previous agreement to pay rent; that nothing had previously been said about paying rent for the four-acre lot; that he had never before demanded rent, nor made any charge of it, and that he knew, when he accepted the mortgage, it embraced this lot as part of the mortgaged premises. Each of the parties has a deed for this lot. That of the defendant would seem, judging by the force of the

Holt *v.* Creamer.

papers, to confer the superior title. The claim of $243.15, the defendant says he thinks represents, in part, notes and other claims collected by the mortgagor for him. The mortgagor swears that, prior to the execution of the mortgage, he had paid to the defendant all he had ever collected for him. The evidence makes it entirely clear that the amount included in the mortgage, on this account, is largely in excess of the amount actually received by the mortgagor.

The mortgagor confesses that he made the mortgage for a fraudulent purpose. His wife left him as long ago as 1863 or 1864. She subsequently threatened to take legal proceedings to compel him to support her. The defendant and he are brothers. He says that after these threats came to his knowledge, he applied to the defendant to assist him in devising a scheme by which his wife's demands might be defeated, and that it was then arranged that he should fabricate a large debt to the defendant, by making notes, without consideration, to him, from time to time, and that the debt thus created should ultimately be made the basis of a mortgage. He further says that the mortgage in question is the consummation of that scheme, and does not represent a single dollar of honest debt. The evidence of a person who confesses that he has been guilty of a fraudulent conspiracy of this character, is, as a general rule, entitled to very little credit, and were the evidence of the mortgagor in this case wholly uncorroborated, I should discard it at once, as unworthy of consideration.

The proofs, considered as a whole, render it entirely clear that at the time the mortgage was executed the mortgagor was indebted to the defendant in some sum of money, but I think the cunning of any ordinary mind would find it impossible, in consequence of the contradictory character of the evidence, both oral and documentary, to determine the precise sum with anything like a fair conviction that the result arrived at expressed the truth with reasonable certainty. I think the evidence also makes it entirely certain that in fixing the present actual debt to be secured by the mortgage, both parties intended to swell it to its utmost proportions, without regard to the real truth or right

of the case, and that in their zeal to accomplish this result they magnified a comparatively small debt into a very large one. It is manifest that they did not deal at arm's length, but that each made the best use of his cunning to contrive excuses and pretexts which would seem to justify the increase of the grand total to the highest possible figure. It is impossible to believe that in an honest settlement, where the creditor means to get all that is justly due to him, and the debtor means to yield nothing but what duty and right require, that the debtor would agree, without resistance or complaint, to pay, for the use and occupation of lands which he had held in undisturbed possession for sixteen years, under a claim of title, a sum as rent greatly in excess of the value of the lands, and that the creditor, in taking a security for such a claim, would accept a mortgage on the very lands out of which the rents arose. Such a transaction can only be interpreted in one of two ways, either that the parties were too stupid to distinguish the rights of one of them from the other, or that the business in which they were engaged had some ulterior purpose.

The case presents other features which deserve consideration. The defendant says the mortgagor, notwithstanding the fact that his own estimate of the value of his farm was only from $12,000 to $15,000, wanted him to take a mortgage on it for $18,000, which he refused to do, but he admits that he made no inquiry as to his brother's object, and never knew why he wanted him to take a mortgage for so large a sum. It is difficult to understand the defendant's indifference respecting his brother's purposes, unless we assume that he already knew what they were, or suspected enough to make him fear that inquiry might be attended with danger. Two bonds were given with the mortgage, one conditioned for the payment of $6,974.82, with interest, on the 1st day of April, 1876, and the other for the payment of $7,000 with interest, on the same day. On the delivery of the mortgage, a paper signed by the defendant, was given to the mortgagor, which states that the bond for $7,000 had been given to cover any advances of money that might thereafter be made by the defendant to the mortgagor, and also any interest which

might accrue on the other bond and remain unpaid. It will be observed that the defendant did not bind himself to make any further advance. He says he cannot say that he intended, when this paper was delivered, to make any future advance; his memory is a complete blank as to his intention at that time, but he does remember that on the day the mortgage was executed the mortgagor wanted $130, but he did not get it. No part of the $7,000 has been advanced. The mortgage conveyed all the lands owned by the mortgagor. His personal property, at the time the mortgage was given, was insufficient to pay his unsecured debts. It was sold by the sheriff, under a judgment prior to that of the complainant, within less than two years from the time the mortgage was given. Nothing was realized by the sale for the complainant. At the time the defendant's mortgage was made, the mortgaged premises were subject to a mortgage of $1,500, made in 1873, and also to a judgment of over $200, recovered in 1874.

The legal rules to be applied in settling the rights of the parties to this controversy are firmly established. There can be no doubt that to the extent that the real debt, which this mortgage purported to secure, was false, the mortgage was without consideration, and consequently fraudulent as to creditors. Nor can it be doubted that if a mortgage be given with the fraudulent intent to cover and conceal from the mortgagor's creditors a part of his property, although, as to another part of his property, it is meant to be an actual security for an honest debt, that, as to creditors, it will be declared altogether void. *Russell* v. *Winne*, *37 N. Y. 596*. A deed which is fraudulent in part, as to creditors, will be declared void *in toto*. *Mead* v. *Coombs, 4 C. E. Gr. 112*. In such transactions, fraud vitiates absolutely whatever it infects. All the partialities of the law expire under its antipathy to fraud. *Rob. on Fraud. Con. 521*. Mr. Justice Depue is reported to have said recently, in charging a jury, while sitting at circuit, that a debtor has a right to prefer one creditor over others, provided such preference be honestly made; but if the instrument of preference names a sum as its consideration which is larger than the real debt, the instrument is void. The reason of this

is, that the purpose of such an instrument is to cover up the debtor's property and protect it against his other creditors, and this fraud infects the whole instrument and makes it void *in toto*. *2 N. J. Law Jour. 370* (Dec., 1879.) A mortgage like that under consideration stands on the footing of a conveyance made by a debtor in failing circumstances, to a creditor, in payment of a debt much less in amount than the fair value of the property conveyed. Such transactions, in the language of Chief-Justice Beasley, are well calculated to excite suspicion and awaken vigilance, and a deed made under such circumstances can only be allowed to stand on the ground of its entire *bona fides*, and the burden of proof, in this respect, is on the purchaser. *Demarest* v. *Terhune, 3 C. E. Gr. 534.* A mortgagee, to be able successfully to resist the impeachment of his security, must appear to be not only a mortgagee for value, but a mortgagee in good faith. If it appears that his mortgagor executed the mortgage for a fraudulent purpose, and that he knew of such purpose, and took the mortgage to aid him in its execution, his mortgage is void against those who are defrauded by it, even if it is founded on a perfect consideration. *Schmidt* v. *Opie, 6 Stew. Eq. 141.; Jones* v. *Naughright, 2 Stock. 303.*

The validity of a mortgage made in good faith, to secure future advances, is no longer open to question. Such instruments have been repeatedly upheld by the courts of this state. *Bell* v. *Fleming, 1 Beas. 19 ; S. C. on appeal, Id. 490 ; Griffin* v. *N. J. Oil Co., 3 Stock. 53 ; Taylor* v. *La Baw, 10 C. E. Gr. 222 ; MacIntosh* v. *Thurston, Id. 242 ; Platt* v. *Griffith, 12 C. E. Gr. 207.* To render them valid, it does not seem even to be necessary that the mortgagee should be under a binding obligation to make a further advance, but where that matter is left optional with him, so that he may do it or not, as he sees fit, they have been held good. *1 Jones on Mort. § 369.* Nor will the fact that a mortgage to secure future advances wears a false or deceitful face, as it does in every instance where it purports to be given to secure a present instead of a future debt, be taken, in every case, as conclusive evidence of fraud, but it is a suspicious circumstance, which will always provoke the most search-

ing scrutiny. In the language of Chief-Justice Marshall, a deed which misrepresents the consideration on which it is founded, is liable to suspicion, and should undergo a rigorous examination, and not be upheld unless it is shown to be fair. *Shirras* v. *Orig, 7 Cranch 50*. Chancellor Williamson, speaking on the same topic, has said:

"If the transaction is a fair one, there can be no objection to state it as it really exists. By stating it otherwise, it renders the security a suspicious one. It would require very little, in addition to this circumstance, to induce the court to postpone such a mortgage to a creditor or *bona fide* purchaser." *Bell* v. *Fleming, supra.*

He expressed his condemnation of this species of deceit with even more emphasis in the subsequent case of *Griffin* v. *N. J. Oil Co., supra.*

The test by which instruments of this kind must always be tried is, Was it made for an honest purpose? Here it is undisputed that the mortgagor wanted to give a mortgage for a sum largely in excess of the value of the lands he proposed to mortgage—for a sum so large that it is manifest the defendant declined to accept it, because he believed a mortgage for that sum would show on its face that it was false. The defendant knew that his brother, for some purpose, was trying to magnify his liabilities, and that he wanted him to take a mortgage for a sum so large that if his creditors should regard it as an honest security, his lands would be effectually put beyond their reach. This knowledge made inquiry as to his debtor's object and purposes an obvious duty. A failure to perform it was a fraud. Fraud may be passive as well as active. *Rob. on Fraud. Con. 589*. Silence, under the circumstances stated, can only be explained by attributing to him a willingness to help his debtor in his scheme. By his own confession, then, the defendant occupies this position: At the request of his debtor he accepted a mortgage from him for double the sum he claimed to be due to him; he did not intend to make further advances, and his debtor did not expect him to do so; his debtor was not engaged in any business or enterprise which made additional capital either necessary or desirable, and did not

Holt *v.* Creamer.

expect, so far as appears, to be so engaged at any time in the future. It is not pretended that the $7,000 was intended to constitute a gift. These facts are their own interpreter ; they stamp the mortgage as an illusory security. It is a misnomer to call it a security for future advances.

The provision that the interest on the alleged real debt might, at the option of the debtor, be converted into principal, is, in my judgment, the most fraudulent feature of the arrangement. If the whole $7,000 was intended to cover interest, and nothing else—and we cannot, in view of the evidence, believe it had any other purpose—then we must conclude that the design of the defendant, in taking a mortgage in this form, was to allow the mortgagor to hold the mortgaged premises, against creditors and others, under cover of the mortgage, for such period of time as would be required for the principal debt to earn a sum of interest larger than the principal. A contrivance more inimical to the rights of creditors can scarcely be imagined. Viewed in any light, it is impossible for me to see any honest purpose which could be subserved by placing the consideration of this mortgage at double the sum which the defendant claimed to be due to him from the mortgagor. Whether it was done to frighten off creditors, or for some other fraudulent purpose, it is unnecessary to inquire. One of its natural and inevitable consequences was to conceal the mortgagor's property, and to thwart and obstruct his creditors in the pursuit of their rights. This was enough to render it fraudulent as to them. My judgment is, the mortgage is void as to the mortgagor's creditors, and must be so declared as to the complainant. The complainant is entitled to costs.